## AFFIDAVIT OF DET. GREG WALSH

I, Greg Walsh, being duly sworn, depose and state as follows:

1. I am a Detective with the Boston Police Department ("BPD") where I have worked for more than 15 years. I am currently assigned to the Drug Control Unit ("DCU") in District D-4, which covers neighborhoods in the Back Bay, South End, Lower Roxbury, and Fenway areas of Boston.

2. During my tenure with the Boston Police Department, I have participated in investigations relating to the distribution of controlled substances including cocaine, cocaine base (also known as "crack cocaine"), heroin, marijuana, and other illegal drugs and have received training in the area of narcotics investigations. I have been the affiant on affidavits in support of search warrants, arrest warrants, and other applications.

3. This Affidavit is submitted in support of an application for a criminal complaint charging **JOAO BRANDAO** with distribution of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841. On July 20, 2011, **BRANDAO** sold cocaine to an undercover officer in the area of 27 Olney Street in Dorchester while I videotaped the transaction.

4. I am familiar with and participated in the underlying investigation. I have reviewed reports and spoken with the undercover officer who made the purchase from **BRANDAO** on July 20, with my supervisor (who processed and field tested the drugs), and with other officers who assisted in this investigation.

5. This affidavit does not set forth all the facts developed during the underlying investigation. Rather, it sets forth facts I believe to be sufficient to establish probable cause to believe that **BRANDAO** committed the crime set forth in the accompanying Criminal Complaint.

6. For some time, the D-4 DCU has been investigating drug dealing in and around the Bowdoin Street area in Dorchester due to abnormally high amount of area violence, often thought to be associated with street level drug trafficking. During the course of these various investigations, undercover officers were used to make purchases of cocaine from area dealers. Because of the ongoing nature of these operations, arrests were not made after individual buys but rather dealers were identified as buys took place in anticipation of arrests to be made at a later date.

7. Activity in the Bowdoin Street investigations took place on July 20, 2011. On that date, I met with a BPD undercover officer ("the UC") in anticipation of the UC making a buy in the Bowdoin Street area and provided the UC with $50 of prerecorded BPD buy money with which to make that purchase. Myself and other officers from the D-4 DCU then took up surveillance positions so that we could observe and record the UC while he was on the street, using a video camera that I operated.

8. At approximately 12:30 p.m. on July 20, 2011, the UC called an individual he/she had met while in the Bowdoin Street area on a prior date and knew only as "Dave." When the UC met Dave, Dave offered to sell the UC crack if he/she came back to

the area and provided the UC with telephone number 857-251-0745 so that the UC could reach him.

9. When the UC placed the call to 857-251-0745 on July 20, a male answered the phone who identified himself as "Dave." The UC told Dave that he/she was near Bowdoin Street and was looking to buy $50 of crack cocaine. Dave told the UC that he would take care of him/her and asked the UC to call when the UC got to the area.

11. Minutes later, the UC received a call from **BRANDAO**. **BRANDAO** called the UC from 857-991-9337, the same number **BRANDAO** had used during a July 15 drug sale made by **BRANDAO** to the UC in the same area that was also brokered by "Dave."

12. **BRANDAO** asked the UC what he/she was looking for and the UC said he/she wanted $50 of crack cocaine. **BRANDAO** told the UC he only had powder cocaine and the UC said he/she would take it. **BRANDAO** then instructed the UC to meet him on Olney Street, which the UC understood to mean the area around 27 Olney, where the UC had met **BRANDAO** on July 15, 2011 when he/she purchased cocaine from **BRANDAO** on that date.

13. The UC then proceeded to 27 Olney Street (where I and other surveillance units had gone as well) on a bicycle. Once there, the UC saw a black male standing in the yard of 27 Olney Street, approached him, and asked if "JB" (**BRANDAO**) was around. In response, the man made a call on his cellular telephone, and spoke to someone, initially in a foreign language, telling the

person (ultimately in English) to "hurry up" before he terminated the call. The man then turned to the UC and told him/her that "JB" was on his way.

14. The UC then saw **BRANDAO** coming down Olney Street from the direction of Bowdoin Street. As **BRANDAO** got closer, he waived at the UC who crossed the street on his/her bike to meet **BRANDAO** directly in front of 27 Olney Street. As the UC crossed the street, he/she noted that **BRANDAO** had put something on one of the pillars on the stucco wall that surrounds 27 Olney Street.

15. When the UC walked up to **BRANDAO**, **BRANDAO** pointed out the item he had placed on the pillar and asked the UC for the money. The UC then gave **BRANDAO** $50 of buy money which **BRANDAO** took and counted. The UC retrieved the item which **BRANDAO** had left on the pillar, which was a plastic bag containing a powder that subsequently field tested positive for cocaine.

16. Before the UC left, **BRANDAO** asked him/her to let him know the powder cocaine was good and the UC asked **BRANDAO** if he had any heroin for sale. **BRANDAO** said he didn't have any right then but would soon be getting some and would be charging $450 for a half a finger.[1] While he and the UC were having this conversation, **BRANDAO** dropped the buy money that the UC had just given him and **BRANDAO** had to bend down to pick it up. As he did so, the UC thanked **BRANDAO** for the cocaine and rode away.

---

[1] Based on my training and experience, I know that a "finger" of heroin usually refers to an amount equal to 10 grams.

17. Much of the meeting between **BRANDAO** and the UC was surveilled by myself and other officers from the D-4 DCU. As set forth above, I was using a video camera (with no audio capability) to record the buy.

18. After completing the buy, the UC met with my supervisor, Sgt. Detective Keenan, who took the drugs the UC had purchased from **BRANDAO** and field tested them. The drugs field tested positive for cocaine and were then logged into evidence so they could be sent to the State Laboratory in Jamaica Plain for further analysis.

19. Based upon the foregoing, I submit there is probable cause to believe that, on July 20, 2011, **JOAO BRANDAO** distributed cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841.

Signed under the pains and penalties of perjury this 28th day of September, 2011.

_____
DET. GREG WALSH
BOSTON POLICE DEPARTMENT

Sworn to and subscribed before me this 28th day of September, 2011.

_____
JENNIFER C. BOAL
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

5